UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID S.,[1]

      **Plaintiff,**

v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      **Defendant.**

Case No. 1:23-cv-22339
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff David S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.      **PROCEDURAL HISTORY**

On January 6, 2021, Plaintiff filed his application for benefits, alleging that he has been disabled since May 24, 2015. R. 110, 121, 264–70. The application was denied initially and upon reconsideration. R. 122–26, 134–43. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 144–45. ALJ Karen Shelton held a hearing on August 17, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 60–100. In a decision dated October 6, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 24, 2015, Plaintiff's alleged disability onset date, through December 31, 2021, the date on which Plaintiff was last insured for disability insurance benefits. R. 39–54. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 25, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 10, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On February 18, 2025, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

    A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   THE ALJ'S DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. R. 41. He was 39 years old on that date. R. 53. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 24, 2015, his alleged disability onset date, and December 31, 2021, the date on which he was last insured. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: traumatic brain injury, vestibular disorder, diabetes mellitus, migraine headaches, cervical and lumbar degenerative disc disease, arthropathies of the knee, obesity, post-concussive syndrome/neurocognitive disorder, post-traumatic stress disorder, depressive disorder, somatoform disorder, and anxiety disorder. *Id*. The ALJ also found that the following medically determinable impairments were not severe: low vision, hearing loss, Crohn's disease, sleep apnea, status-post fractured femur, and seizures. R. 42–43. Plaintiff's complaint of numbness and tingling in his hands was determined to be not medically determinable. R. 43.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 43–46.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 46–53. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a corrections officer and composite job of salesperson of parts and sales representative of farm and garden equipment and supplies. R. 52–53.

At step five and relying on the testimony of a vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as an addresser, a document preparer, and a tube operator– existed in the national economy and could be performed by Plaintiff with this RFC. R. 53–54. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 24, 2015, his alleged disability onset date, through December 31, 2021, the date on which he was last insured. R. 54.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 9. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 6.

**IV.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Plaintiff's Crohn's disease at steps two and four of the sequential evaluation process. *Plaintiff's Memorandum of Law*, ECF No. 5, pp. 19–23; *Plaintiff's Reply Brief*, ECF No. 9, p. 5. Plaintiff specifically argues that the ALJ erred in finding that Plaintiff's Crohn's disease was not a severe impairment and in failing

8

Case 1:23-cv-22339-NMK   Document 13   Filed 09/23/25   Page 9 of 17 PageID: 2419

to consider the effects of that disease when crafting the RFC. *Id*. For the reasons that follow, this Court agrees.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "An ALJ's failure to consider the severity of an impairment or an ALJ's determination that an impairment is non-severe is not ordinarily dispositive at Step Two if the ALJ has found at least one severe impairment. This is because the ALJ is required to consider the combined effects of all impairments—regardless of severity—at Steps Three through Five." *Taylor v. Comm'r of Soc. Sec.*, No. 16-CV-05033, 2018 WL 2298358, at *8 (D.N.J. May 21, 2018) (citing, *inter alia*, 20 C.F.R. § 416.923; *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (finding harmless error where ALJ erred in finding at Step Two that some, but not all, of claimant's impairments were not severe)); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

In the case presently before the Court, the ALJ concluded at step two that Plaintiff in fact suffered severe impairments—*i.e.*, traumatic brain injury, vestibular disorder, diabetes mellitus, migraine headaches, cervical and lumbar degenerative disc disease, arthropathies of the knee, obesity, post-concussive syndrome/neurocognitive disorder, post-traumatic stress disorder, depressive disorder, somatoform disorder, and anxiety disorder. R. 41. The ALJ also found that

9

"[t]here is objective evidence in the medical record of impairments that are non-severe[,]" noting that Plaintiff "has been evaluated and treated for[,]" *inter alia*, Crohn's disease. R. 42. However, the ALJ found that Plaintiff's Crohn's disease resulted in only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on his ability to meet the basic demands of work activity:

> As for gastrointestinal disorder, the record shows that the claimant reported abdominal pain and diarrhea. Exhibit 8F [R. 1710–73]. He was treated by a gastroenterologist in connection with a long-standing diagnosis of Crohn's disease since at least 2014. Exhibit 8F. Endoscopy showed mild findings, including only mild architectural distortion of the mucosa, no inflammatory bowel disease, a benign lymphoid, and the claimant was negative for dysplasia. Exhibit 8F/49. The record does not show that the claimant experienced symptoms from this condition which would limit work activity. Exhibit 8F.

*Id*. The ALJ made no further mention of Plaintiff's Crohn's disease throughout the remainder of the decision. R. 43–54.

Plaintiff insists that the medical evidence confirms that his Crohn's disease was a severe impairment. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 22 (pointing to a 2016 endoscopy that revealed moderate diverticulosis of the sigmoid colon, Crohn's disease of the small bowel, and irritable bowel syndrome with diarrhea and to a 2019 test that revealed diverticulosis of the sigmoid and Crohn's disease of the colon) (citing R. 1733, 1756). Plaintiff also points to his hearing testimony and to his complaints, made to his treating providers, of alternating diarrhea and constipation. *Id*. at 22–23 (citing R. 93, 1740, 1743, 1762); *see also Plaintiff's Reply Brief*, ECF No. 9, p. 5 (citations omitted). Furthermore, Plaintiff argues, even if his Crohn's disease was non-severe, the ALJ erred by failing to consider this impairment when crafting the RFC and including limitations resulting from the disease, such as time off task or absences from work. *Plaintiff's Memorandum of Law*, ECF No. 5, p. 23; *Plaintiff's Reply Brief*, ECF No. 9, p. 5.

For his part, the Commissioner contends that the ALJ correctly concluded that the

medical evidence did not confirm that Plaintiff experienced symptoms from his gastrointestinal impairments that would significantly limit his work activity. *Defendant's Brief*, ECF No. 6, p. 15 (citations omitted). The Commissioner notes that the ALJ "acknowledged the long-standing diagnoses," questioned Plaintiff at the administrative hearing, and explained why Plaintiff's "treatment did not align with a severe impairment[.]" *Id*. (citing R. 42, 92–93). The Commissioner therefore argues that the ALJ "reasonably concluded that the conditions were managed medically and were amenable to proper control by adherence to recommended treatment (Tr. 42)." *Id*.

      The Commissioner's arguments are not well taken. Crohn's disease is a type of inflammatory bowel disease. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, App'x 1 – Part A1, § 5.00E(1). "Remissions and exacerbations of variable duration are the hallmark of [inflammatory bowel disease]." *Id*. "Crohn's disease may involve the entire alimentary tract from the mouth to the anus in a segmental, asymmetric fashion. Obstruction, stenosis, fistulization, perineal involvement, and extraintestinal manifestations are common. Crohn's disease is rarely curable and recurrence may be a lifelong problem, even after surgical resection." *Id*. There is no dispute that Plaintiff suffers from Crohn's disease; the ALJ acknowledged Plaintiff's "long-standing diagnosis of Crohn's disease since at least 2014." R. 42. Contrary to the Commissioner's argument before this Court, the ALJ never concluded that Plaintiff's Crohn's disease was "amenable to proper control" by adhering to recommended treatment. *See id*. The ALJ actually concluded that the medical record did not reflect symptoms that "would limit work activity." *Id*. The ALJ offered no discussion of the relevant evidence, nor did she otherwise explain why Plaintiff's Crohn's disease—a disease that is hallmarked by remissions and exacerbations— imposes no more than a minimal effect on Plaintiff's ability to meet basic work demands. *See id*.

11

(citing generally Exhibit 8F, R. 1710–73). Notably, the medical record reflects, *inter alia*, that Plaintiff repeatedly complained of—and was treated for—diarrhea, constipation, abdominal pain, stomach cramps, and/or rectal bleeding throughout the relevant period. R. 1727, 1729–30, 1740, 1748–49, 1751–52, 1762–63. The record also confirms flare-ups that lasted weeks or months. R. 1729 (note dated March 21, 2016, indicating "flare up for 2 months. Multiple bms, loose"), 1740 (note dated June 13, 2017, indicating "3 wks diarrhea, abdominal cramping after eating"), 1762 (note dated April 29, 2021, indicating that Plaintiff "[r]eports alternating constipation and diarrhea. On viberzi but gets intermittent constipation. . . . Rectal bleeding at times").

In defending the ALJ's step two finding that Plaintiff's Crohn's disease was not severe, the Commissioner also points out that the ALJ "questioned Plaintiff at the hearing[.]" *Defendant's Brief*, ECF No. 6, p. 15 (citing R. 92–93). However, the Commissioner does not explain—and it is not apparent to the Court—how Plaintiff's testimony supports the ALJ's step two finding. Notably, Plaintiff testified that he developed Crohn's disease at the age of 18 and relied on the Family Medical Leave Act when dealing with the disease, explaining, "I was actually in the hospital multiple times during my employment with the state[,]" with the longest period being three weeks and the shortest stay two to three days. R. 92. "I have severe diarrhea a lot of times, or I have severe constipation. There's no in-between -- and some bleeding, things like that. The last colonoscopy I had in June, I had a bunch of polyps and an ulcer." R. 93. Plaintiff explained how he handled these symptoms during an eight-hour shift when he was working:

> If it was really bad, I didn't come to work and I used family medical leave. If it wasn't, I'd use the bathroom as best I could. There were times -- I mean, to be blunt, I went to the bathroom in my pants, and so I kept changes of clothes and just -- it is what it is. You know. It's been embarrassing on more than one occasion.

R. 93; *see also C.P. v. O'Malley*, No. 23-CV-00278-NRN, 2024 WL 757087, at *5 (D. Colo. Feb. 23, 2024) (finding that substantial evidence requires additional RFC limitations to accommodate Plaintiff's bowel movements and stating that "neither the ALJ nor the Commissioner explain[s] why normal abdominal examinations, colonoscopies with mild to moderate findings, or a medical finding of Crohn's disease 'without complication' would undercut Plaintiff's reported symptoms regarding the urgency, frequency, and duration of her bowel movements. It is not obvious to the Court, nor is it explained in the record, why such medical evidence is somehow inconsistent with Plaintiff's reported bathroom usage"). In light of this record, the Court cannot follow the ALJ's reasoning in finding that Plaintiff's Crohn's disease fails to meet the *de minimis* standard of a severe impairment. *See Newell*, 347 F.3d at 546; *McCrea*, 370 F.3d at 360; *see also Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Indeed, the ALJ failed to explain her reasoning on this point.

Nor can the Court conclude that the ALJ's step two error is harmless. It is true that, "[g]enerally, an error at step two is harmless because it is a threshold test. . . . As long as one impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments." *Herring v. Colvin*, 181 F. Supp. 3d 258, 276–77 (M.D. Pa. 2014) (citations omitted); *see also Swaney v. Saul*, No. CV 18-1530, 2020 WL 529602, at *2 (W.D. Pa. Feb. 3, 2020) ("Rather, the ALJ proceeds beyond step two and, in so doing, an ALJ makes an RFC determination taking into consideration all impairments, including any impairment that is not severe. Thus, an ALJ will proceed to consider a plaintiff's severe and

13

non-severe impairments in the evaluation process in determining a plaintiff's [RFC]."); *Taylor*, 2018 WL 2298358, at *8. "However, an error [at step two of the sequential evaluation] can harm the claimant if an impairment is improperly found to be not medically determinable or when non-severe impairments are not considered at later steps." *Herring*, 181 F. Supp. 3d at 277.

In this case, after finding at step two that Plaintiff's Crohn's disease was non-severe, the ALJ never again considered the disease at any of the later steps of the sequential evaluation. R. 43–54; *see also Herring*, 181 F. Supp. 3d at 277. Plaintiff's Crohn's disease was instead "effectively screened out of the analysis at step two. As a result, the potential effect of [that] impairment[], alone or in combination with each other and the [other] impairments, was not analyzed at step three or subsequently." *Melendez v. Colvin*, No. CV 15-3209, 2016 WL 4718946, at *4 (D.N.J. Sept. 8, 2016); *see also Swaney*, 2020 WL 529602, at *2 (stating that "an ALJ must consider all of a claimant's impairments, including non-severe impairments" when making an RFC determination and remanding where "the ALJ fails to recognize, mention or discuss Plaintiff's mental impairments" at later steps); *Taylor*, 2018 WL 2298358, at *4, 9 (remanding where the ALJ effectively "'screened out' of the remaining disability evaluation process at Step Two all of Plaintiff's mental impairments").

The RFC found by the ALJ contains no accommodation for limitations flowing from Plaintiff's Crohn's disease, such as additional bathroom breaks, time off task, or absences from work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with additional limitations. The claimant can frequently handle and finger. The claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights or around hazardous machinery, and cannot drive commercially. The claimant is able to understand, remember, and carry out simple,

14

>routine, and repetitive tasks, in a routine work environment with few changes, and can make simple work decisions. The claimant can work for 2 hours before needing a standard 15-minute break. The claimant can have frequent contact with supervisors and occasional contact with co-workers, but no contact with the public.

R. 46–47; *see also Jeff D. v. Saul*, No. 2:19-CV-00233-RHW, 2021 WL 2336951, at *3–4 (E.D. Wash. June 8, 2021) ("Typically, RFC determinations considering the limitations resulting from Crohn's disease and IBS use phrases that stress the urgency of the claimant's need to use a restroom. . . . This is because . . . it is reasonable that a person with Crohn's disease does not decide when to go to the bathroom.") (citations omitted); *Pace v. Colvin*, No. 16-CV-00007-RBJ, 2016 WL 7383404, at *9–10 (D. Colo. Dec. 21, 2016) ("The record is rife with reports that she has to use the restroom more often and for more time than a normal person. . . . The ALJ's failure to account for Ms. Pace's disorder in the frequency and duration of her bathroom breaks undermines the conclusion that she is not disabled. . . . The ALJ's RFC assessment should address Ms. Pace's actual need for bathroom breaks. If necessary, the ALJ should develop the record to determine exactly how often and for how long Ms. Pace needs these unscheduled breaks."); *cf. Morales v. Comm'r of Soc. Sec.*, No. 1:18-CV-00996-NLH, 2019 WL 2642649, at *6 (D.N.J. June 27, 2019) ("The ALJ also improperly determined that Plaintiff's symptoms were 'controlled' while on medication, but that 'control' still resulted in three to four instances of diarrhea per day for several days a week. . . . That unrefuted finding compels the conclusion that the ALJ's determination that Plaintiff retained the RFC perform unskilled work at the light exertional level on a sustained, full-time basis was in error.").

The ALJ's failure to address any functional limitations flowing from Plaintiff's Crohn's disease takes on greater significance when one considers that the vocational expert testified that employers tolerate an employee being off task up to 15% of the day, but anything more than that would eliminate work and that employers typically tolerate 6 to 8 unscheduled absences (to a

maximum of ten) per year. R. 97–99 (confirming further that consistently arriving late or leaving early two times per month would be treated as absences and no jobs would be available to such an individual).

Accordingly, the Court cannot conclude that substantial evidence supports the ALJ's decision at steps two and four. This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[4] Moreover, remand is appropriate even if, upon further examination of Plaintiff's Crohn's disease and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[4] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's Crohn's disease at step two and beyond in the sequential evaluation, the Court does not consider those claims.

V.  **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 23, 2025                              *s/Norah McCann King*
                                                                              NORAH McCANN KING
                                                                  UNITED STATES MAGISTRATE JUDGE